HINTON v. LOUISIANA CENTRAL LUMBER CO.*

No. 4238.

Court of Appeal of Louisiana. Second Circuit.

Feb. 16, 1932.

Cas Moss, of Winnfield, for appellant.

Thornton, Gist & Richey, of Alexandria, and Stubbs & Thompson, of Monroe, for appellee.

CULPEPPER, J.

Plaintiff prosecutes this appeal from a judgment of the lower court sustaining an exception of no cause or right of action and dismissing the suit.

It is a suit under the Employers' Liability Act of this state to recover $20 per week for 400 weeks, beginning May 29, 1930, with 5 per cent. per annum interest on each weekly payment from its maturity until paid, plus $250 for hospital expenses and doctors' bills, as compensation for accidental injuries alleged to have been sustained by plaintiff while employed by defendant on 29th of May, 1930, in the parish of Winn, La.

Plaintiff alleges in paragraph 2 of his petition that defendant is engaged in operating a lumber business in the parish of Caldwell, La. In paragraph 4 he alleges he was employed by defendant company on the 29th of May, 1930, and for several months prior, as its timber patrol agent, and was actually performing services for said company in said capacity and within the scope of his employment at the time he was injured, which was on the date above named. In paragraph 5, he alleges: "That on May 29, 1930, petitioner was riding over the property belonging to Louisiana Central Lumber Company within the Parish of Winn, * * * and while actually performing the services for which he was employed * * * and working within the scope of his employment, the horse which petitioner was riding bogged in soft ground and fell to the ground * * * with such force that it threw petitioner against the horn and pommel of the saddle. * * *"

Petitioner thus describes how he was injured.

In paragraph 6 he sets forth more fully his duties and place and circumstances of his employment as follows: "The duties for which petitioner was employed by the Louisiana Central Lumber Company as timber patrol agent covered a large territory and petitioner was required to ride over this territory daily and protect the interests of said

Louisiana Central Lumber Company against anyone trespassing against its timber holdings, and petitioner was in the actual discharge of his duties * * * at the time his horse fell and injured him. * * *"

To this petition defendant filed an exception of no right or cause of action upon the following grounds: "It shows that it is alleged in the petition * * * that he was employed * * * as a timber patrol agent, his duties being to cover certain territory and protect the interest of the Louisiana Central Lumber Company against anyone trespassing against its timber holdings and that he was in actual discharge of his duties as such * * * on the day he claims to have sustained the injuries complained of herein; that being so employed he was not engaged in any hazardous occupation connected with either the defendant's logging or timber manufacturing business; that his occupation was non-hazardous and that, therefore, he is not entitled to compensation under the Employers' Liability Act. * * *"

Defendant also filed answer averring that at the time plaintiff was injured he was employed as patrol agent, and that his duties consisted solely and exclusively in patrolling its timber and land holdings for the purpose of reporting any trespassing on same, and that his duties had no connection whatever with either its logging department or as a manufacturer of lumber, and therefore plaintiff's duties were entirely of a nonhazardous nature.

Upon these issues the case was set for trial for September 8, 1931, on which date, according to the minute entries, plaintiff was permitted, over objections of counsel for defendant, to file a supplemental and amended petition. Plaintiff set forth in his amended petition that he desired to amplify paragraph 6 of the original petition so as to allege further that he (quoting) "was required to employ labor and to supervise and direct the cutting into saw logs and the hauling of any and all timber which had been trespassed upon by anyone, or which had been felled by fire, winds or other causes," as well as to patrol all the timber holdings of defendant, which plaintiff alleged he "was required to perform as patrol agent for plaintiff" (meaning defendant).

The exception was tried, sustained, and the suit dismissed. From a formal signed judgment of dismissal, plaintiff prosecutes this appeal.

Plaintiff's counsel contends that the question to be decided is whether or not plaintiff was engaged in a hazardous occupation at the time he was injured.

It is contended by defendant that plaintiff must not only prove, but must necessarily allege, that he was performing services arising out of and incidental to his employment in one

of the hazardous trades, businesses, or occupations enumerated in the act, citing Dewey v. Lutcher-Moore Lumber Co., 151 La. 672, 92 So. 273, to the point that: "Where the petition of plaintiff in a compensation case fails to disclose that at the time of the alleged accident the plaintiff was engaged in performing services in connection with any of the hazardous occupations named in paragraph two of Section 1 of the Act, or that the business he was engaged in had been declared hazardous by a court of competent jurisdiction, or that the plaintiff and defendant had agreed in writing to come under the Act, the petition fails to disclose a cause of action."

Defendant contends that plaintiff has failed to allege upon any of the requisites above set out, and therefore no right or cause of action is shown.

Plaintiff invokes the rule which requires that the Employers' Liability Law should be liberally construed in favor of the employee and his dependents. Plaintiff's counsel asserts in brief (quoting): "We have not been able to find where such occupation" (referring to that alleged on) "has been classed as a hazardous or non-hazardous occupation by any decision of the courts. It is a duty however, in connection with both logging and lumbering, and is classed under the Compensation Law of Louisiana as a hazardous business. If such services were not performed by plaintiff or anyone else, then the logging and lumbering business of defendant would be materially interfered with. We therefore submit that under the law and the interpretations of the courts classifying hazardous and non-hazardous business, that plaintiff's duties should be classified as hazardous."

Plaintiff also points out that among the hazardous trades named in the act are that of sawmills, logging, and lumbering, and that defendant is engaged in all three of these; that plaintiff's duties were to watch over and patrol the timber holdings, and to supervise and direct the cutting and hauling of all down timber from any cause found on said holdings; that such constitute duties in connection with and are incidental to defendant's "logging and lumbering" business.

■ It is true that plaintiff has nowhere in his petition alleged in so many words that the business in which he was engaged was hazardous, but, if he has set up a state of facts, taking the petitions, both original and supplemental, as a whole, to be true, which will show that the occupation is one which is declared by the act, or has been declared by the courts to be hazardous, it would be the court's duty to so construe it.

·Logging, lumbering, and sawmilling are named in the act as being hazardous occupations.

It is alleged in paragraph 2 of the amended petition that defendant owns and operates a sawmill in the parish of Caldwell and is engaged in the manufacture of lumber and other commercial articles from timber; that it owns large tracts of timber in the parishes of Caldwell, Jackson, Winn, and La Salle. In paragraph 6 of said amended petition it is alleged that plaintiff's duties as timber patrol agent for defendant, for which he was employed by it, were to protect defendant's timber holdings against trespassers, and to supervise and direct the cutting into sawlogs any and all timber which had been trespassed upon or which had been felled by fire, wind, or other causes, and to supervise and direct the hauling of same. In paragraph 12 of the original petition it is alleged that plaintiff was, at the time he received the injuries complained of, actually engaged in and was performing services for which he was employed, and was acting within the scope of his employment in the course of the business conducted by defendant and necessary to be done for the purpose of its business. In paragraph 6 it is alleged that plaintiff was required as patrol agent to go over daily defendant's large territory of timber, and in paragraph 5 he alleges that, while riding over defendant's property in the parish of Winn on the 29th of May, 1930, in the performance of the services for which he was employed, the horse which he was riding bogged in soft ground and fell to the ground and plaintiff was thrown against the pommel of his saddle, thereby causing his injuries.

It appears that at the time he received the injuries plaintiff was engaged in the actual work of riding over the timbered lands looking for trespassers, and was not engaged in that of supervising and directing the cutting of down timber into logs and having them hauled. Defendant contends that the mere riding over the lands looking for trespassers is certainly not hazardous; that such is not so named in the act, neither has it been declared so by the courts, nor does plaintiff allege that it is.

■ Defendant further contends that it is clear, from both the original and amended petitions, that plaintiff was employed as a timber patrol agent, the duties of which consisted exclusively in patrolling defendant's extensive timber lands for the purpose of detecting and reporting trespassers thereon. On this point we think that, inasmuch as plaintiff has alleged that a part of his duties as patrol agent was to direct the cutting of down timber, which had been felled by trespassers or down from other causes, into logs and having same hauled, we cannot say that defendant's position is correct. In the contract of employment it may have been agreed, and we infer from the allegations that it was agreed, that these other and additional duties were

to be added and form a part of those of patrol agent. It would be necessary that testimony be heard on that point. In defendant's answer it is denied that such was the case, hence that question appears to be an issue which could only be determined by trial on the merits.

Again it is urged that, since defendant's sawmill is located in one parish and the injury occurred in another, it is evident from these pleadings that plaintiff's duties could have no connection whatever with the business of manufacturing lumber carried on by defendant at its mill. While plaintiff does not specifically allege that defendant was engaged in the business of logging, or having timber manufactured into logs and same transported from the parish of Winn, and the others mentioned, to its sawmill, with which to supply the mill, a liberal construction of the petitions, we think, indicates that it was so engaged. And, if that be true, it would follow that logs cut from the down timber alleged on and hauled under plaintiff's supervision was done for defendant in connection with and incidental to its logging business of supplying its mill. This could be true even though the timber was situated in other parishes than where the sawmill was located. It is well known that sawmills often obtain and transport their logs from long distances. This, however, would be a matter of proof.

If a portion of plaintiff's duties under his contract of employment as timber patrol agent was to supervise and direct the cutting and hauling of logs for defendant's sawmill, which, from a liberal interpretation of the petition, it appears it was, and, if plaintiff was injured while in the performance of his duties under said employment and while actually engaged in performing services arising out of and incidental to said employment in the course of his employer's trade or business, the case falls under the occupation of "logging," which is named in the act as hazardous. And under the jurisprudence as built up in this state, this would be true, even though when plaintiff was injured he was actually engaged in the nonhazardous part of his duties of merely riding on horseback over defendant's timbered lands looking for trespassers.

In Youngblood v. Colfax Motor Co., reported in 12 La. App. 415, 125 So. 883, 884, this court held that decedent, for whose death plaintiff sought to recover compensation, was, at the time of the accident resulting in his death, engaged in the occupation of handling gasoline, which is "hazardous" within the terms of the Employers' Liability Act of Louisiana (see Smith v. Marine Oil Co., 10 La. App. 674, 121 So. 782); also that a part of his duties was that of driving, selling, and delivering motor vehicles, which constituted the occupation of operating "engines" and "other forms of machinery" which are termed "hazardous" under the act (citing Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A. L. R. 1380). Yet the particular work which decedent was actually performing at the time he was injured was in taking an inventory for defendant, and that in doing so was handling automobile parts, and a piece of steel, glass, or other object, stuck in one of his fingers which became infected, causing nephritis, from which he died. Decedent was employed by defendant at the time as manager of defendant's business, among the duties of which were those above mentioned. The court in that case apparently recognized that the service of taking an inventory, which required handling automobile parts, was not hazardous, but held that, inasmuch as other portions of his duties were termed "hazardous," although not engaged in them at the time, the case came within the act, and compensation was awarded. In passing upon the case the court quoted approvingly from Byas v. Hotel Bently, Inc., 157 La. 1030, 103 So. 303, to the effect that: "One whose duties are partly hazardous and partly nonhazardous, even though injured while performing duties that are nonhazardous, is entitled to compensation under the Employers' Liability Act."

"It is the business or 'occupation in which the person is employed to perform services rather than his particular duties that determines the application of the act.'" Wright v. Louisiana Ice & Utilities Co., 14 La. App. 621, 129 So. 436, 439.

The term "logging" is defined to be "the business of felling trees, cutting them into logs, and transporting the logs to saw-mills or market." According to plaintiff's petition, such was a part of his duties as patrol agent. If so, he was engaged in a hazardous business. If his duties were confined exclusively to riding over timbered lands to apprehend and report trespassers, such duties might be considered as nonhazardous and he not be deemed to come under the act, but he goes further and brings his case under the act, we think, when he adds that his duties also required him to supervise the cutting and hauling of logs from the timber, because such would come under "logging" by the terms of the act.

We therefore think that by taking the petition as a whole, and giving the allegations therein a liberal interpretation, same may be deemed as setting forth facts, if proven, to maintain an action under the act. The exceptions, we think, should have been referred to the merits. Therefore the judgment appealed from is reversed and set aside and the case ordered remanded to the lower court to be proceeded with in accordance with the views herein expressed.